Joshua M. Lurie, Esq.
Lurie|Strupinsky, LLP
15 Warren Street, Suite 36
Hackensack, New Jersey 07601
Ph. (201) 518-9999
Fax. (201) 479-9955
Attorney for Plaintiffs

| | |
|---|---|
| CAPE FEAR MULTIFAMILY, LLC and ASTORIA ACQUISITION, LLC, | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK |
| Plaintiffs, | Civil Case No. |
| -against- | COMPLAINT, JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL |
| ASTORIA OWNER, LLC; MOSHE WEINGARTEN, individually; VALOR RESIDENTIAL GROUP, LLC; LANDMARK ABSTRACT AGENCY, LLC; JACOB REKANT; and OLD REPUBLIC TITLE INSURANCE COMPANY. | |
| Defendants. | |

Plaintiffs, Cape Fear Multifamily LLC and Astoria Acquisition, LLC ("Plaintiffs"), by way of Complaint against the Defendants, Astoria Owner, LLC, Moshe Weingarten, Valor Residential Group, LLC, Landmark Abstract Agency, LLC, Jacob Rekant, and Old Republic Title Insurance Company (collectively "Defendants") says:

**STATEMENT OF THE CASE**

1. At the end of the day, this matter is really just a case of a real estate deal that fell through after the buyers backed out and the terms of the agreement required that the earnest funds be turned over to the seller. This would be simple, but as with many other cases, the simple results in having extensive underlying, convoluting, facts that have potentially opened liability up to multiple parties and caused extensive harm to the Plaintiffs.

-1-

2. Indeed, and as discussed more in depth below, it appears that, despite representations made, the earnest funds were never transferred to the escrow agent or, if they were, they were not retained as per the terms.

3. Indeed, as the Plaintiff dug deeper into the facts, it appears that this was all part of a greater fraudulent scheme to misrepresent facts to the Plaintiff as to the sale of their highly valuable real estate, depriving them of the ability to sell the property for the highest amount possible and then, as a result of the Defendants' conduct, being constrained to sell at an amount far below (in dollars and cents, not in percentage) the amount to which Defendants would have paid for same.

4. This matter has worked its way through other courts, and now is being brought here, in the Eastern District, so that the Defendants can no longer argue about lack of personal jurisdiction or other defenses as to the local.

**PARTIES**

5. Plaintiff Cape Fear Multifamily, LLC ("CFMF") is a North Carolina limited liability corporation with its principal place of business located at 104 Armour Road, North Kansas City, Missouri 64116.

6. Plaintiff is managed by Astoria Acquisition, LLC ("AA"), a Missouri limited liability corporation with its principal place of business in Missouri. Astoria Acquisition is authorized to do business on Cape Fear's behalf.

7. Defendant Moshe Weingarten ("Weingarten") is, upon information and belief, a resident of the State of New York who resides at or is otherwise servable at 3 Alpine Court, Suite 200, Chestnut Ridge, New York 10977.

8. Defendant Valor Residential Group, LLC, ("VRG") is, upon information and

belief, a New York limited liability corporation with its principal place of business at 3 Alpine Court, Suite 200, Chestnut Ridge, New York 10977, where it may be served.

9. Defendant Astoria Owner, LLC ("AO"), is, upon information and belief, a Delaware limited liability company with its principal place of business at 3 Alpine Court, Suite 200, Chestnut Ridge, New York 10977. It may be served via its registered agent, VCorp Services, LLC at 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805.

10. Defendant Landmark Abstract Agency, LLC ("Landmark"), is, upon information and belief, a New York limited liability company with its principal place of business at 207 Rockaway Turnpike, Lawrence, New York 11559. It may be served through its registered agent, The LLC, at P.O. Box 25, Cedarhurst, New York 11516.

11. Defendant Jacob Rekant ("Rekant") is, upon information and belief, a resident of the State of New York who resides at or is otherwise servable at 207 Rockaway Turnpike, Lawrence, New York 11559.

12. Defendant Old Republic National Title Insurance Company ("Old Republic") is a Florida corporation with its principal office at 3000 Bayport Drive, Suite 1000, Tampa, Florida 33607. Old Republic is registered to do business in New York with several offices in New York and its "Corporate Legal" department being registered and served at its office located at 400 Post Avenue, Suite 310, Westbury, New York 11590.

**JURISDICTION, VENUE AND CHOICE OF LAWS**

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this matter involves damages in excess of $75,000 and there exists complete diversity as to the parties as Plaintiffs are in Missouri, Defendants are in New York or Florida. Each entity as Defendant maintains offices in New York, including within the area covered under the Eastern District of New York

14. Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

15. Pursuant to the salient document, the real estate contract that forms the basis for this matter, the "Agreement and the transactions contemplated [therein] shall be construed in accordance with the laws of the State of North Carolina." Therefore, the contract enforcement claims herein, including breach of contract, should be construed with North Carolina law while the conduct of the Defendants otherwise construed in accordance with New York common law.

## FACTS

16. Plaintiff AA entered into a contract on behalf of Plaintiff CFMF to sell real estate to Defendants AO and VRG in return for payment of SIXTY TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($62,500.00). **Exhibit A**.

17. Pursuant to Section 3.1(a) of **Ex. A**, no later than June 22, 2022, Defendants were required to make a deposit, defined in the agreement as $2,000,000 (hereafter referred to as the "Deposit") in immediately available funds.

18. Pursuant to the same provision of **Ex. A**, the Deposit was to be delivered to Defendant Landmark, to the attention of Rekant, Esq., and Landmark was to act as the escrow agent.

19. Pursuant to the **Ex. A**, upon default or closing, the Deposit was to be sent by Landmark to Plaintiffs' banks in Clay County, Missouri.

20. The Deposit was to count against the purchase price upon consummation of the purchase and sale contemplated by the contracts ("Closing").

21. The Contract was not contingent upon any Defendant obtaining financing for

Closing.

22. The Contract was not contingent upon closing any other sales or other transactions related to Plaintiffs or Defendants.

23. The Deposit was refundable only in certain limited circumstances, for instance upon a Seller Default (as defined in Section 5.5(b)) or the discovery of Material (as defined in Section 4.2) title issues which could not be cured.

24. No such Material title issues existed, and there were no Seller defaults.

25. Pursuant to Section 5.5(c) of **Ex. A**, if Defendants breached the Contract and the sale of the property did not close, the Deposit was to be paid to Plaintiffs.

26. The Contract provides that if legal action is instituted to enforce the Contract, the prevailing party is entitled to recover attorney's fees and all costs incurred.

27. Upon information and belief, Defendants did not fund the Deposit in June 2022.

28. During negotiations of the Contract, Defendant Weingarten repeatedly made assurances to Plaintiffs, that there would be no issues funding either the Purchase Price or the Deposit. Such was a material term required by the Plaintiffs to be willing to enter into the Contract.

29. Notwithstanding, Weingarten repeatedly tried to insert provisions into the Contract which would have made the Deposit refundable and/or extend the time in which Defendants were required to make the Deposit.

30. Weingarten repeatedly tried to extend the inspection and title commitment periods. He even sought to eliminate a common contractual provision stating that time was of the essence in consummating the purchase.

31. Defendants and Plaintiffs entered into the Contract, **Ex. A**, on June 16, 2022.

32. Within a week after signing the Contract, Weingarten contacted Plaintiffs and informed them that the agreed-upon price was "no longer a realistic number in today's world." Such was anticipatory breach.

33. On June 27, 2022, Plaintiffs sent a Notice of Default to Defendants pursuant to Section 5.5(a) of the Contract demanding payment of the Deposit.

34. The next day, Defendants responded via email and letter sent to Plaintiffs wherein they both refused Plaintiffs' demand to fund the Deposit, they also declared the Contract "null and void" unless Plaintiffs agreed to revised terms. Such was further evidence of bad faith.

35. After June 27, Plaintiffs and Defendants AO, Weingarten, and VRG entered into negotiations on a First Amendment to the Contract referenced above. The First Amendment is annexed hereto as **Exhibit B**.

36. The material changes to **Ex. A** by way of **Ex. B** were that it lowered the purchase price to $60,500,000.00 and gave Defendants the option to require Plaintiffs to finance most of the purchase cost (up to FIFTY ONE MILLION FOUR HUNDRED TWENTY FIVE THOUSAND DOLLARS ("$51,450.00")). Thus, by the very nature of the Amendment, **Ex. B**, Defendants represented that they had *at least* NINE MILLION FIFTY THOUSAND DOLLARS ($9,050,000.00) available with TWO MILLION DOLLARS ($2,000,000.00) being the earnest/deposit.

37. Plaintiffs required that the Deposit be funded prior to the execution of the First Amendment.

38. On July 15, 2022, Rekant, on behalf of Defendant Landmark, emailed Plaintiffs and Defendants confirming receipt of the Deposit, in full, and stated that the Deposit was received in connection with the transaction detailed in the Contract and First Amendment.

39. Rekant's email was in reply to an email string attaching drafts of the First Amendment and negotiations regarding the transaction.

40. Rekant and Landmark were therefore aware of the terms of the Contract and First Amendment and that Landmark was identified and accepted its obligations as escrow agent.

41. Rekant and Landmark knew or should have known that the Deposit had not been delivered as required by ∫ and/or that Defendants Weingarten and VRG did not intend to honor the agreements (**Ex. A and/or B**).

42. **Ex. A** at Section 4.2 required a "current commitment for title insurance from the Title Company." Defendants Landmark and Rekant are identified as the "Title Company" in Section 3.1 therein.

43. On July 12, 2022, Defendant Landmark, as an agent for Defendant Old Republic emailed to Plaintiffs that commitment for title insurance required by Section 4.2 of **Ex. A**.

44. That title commitment was issued by Landmark and identifies Landmark as an agent for Old Republic.

45. Landmark was acting in the scope of its agency, either express or implied, for Old Republic when it issued the title commitment.

46. Upon information and belief, Landmark regularly performs escrow services at closings of transactions on which Old Republic has written a title insurance policy.

47. Schedule BI of that title commitment required that Defendants Weingarten and Valor Residential "pay the agreed amount." That amount, identified in the commitment, was $62,500,000.

48. Defendants Landmark and Rekant knew or should have known that Defendants

Weingarten and VRG did not intend to honor either **Ex. A or B** by paying the agreed amount as required by the title insurance commitment.

49. However, Landmark as an agent of Old Republic did not re-issue or cancel the title insurance commitment.

50. As the principal, Old Republic is vicariously liable for the misrepresentations of its agent, Landmark, in part because Landmark was acting with the actual or apparent authority of Old Republic.

51. Landmark was acting within the scope of its authority as an agent of Old Republic when it issued the title commitment and when it chose not to re-issue or cancel the title insurance commitment.

52. Upon information and belief, Landmark was authorized by Old Republic to conduct escrow services in addition to issuing the title commitment.

53. Upon information and belief, the title commitment was provided to Plaintiffs on July 12 to induce Plaintiffs to enter into **Ex. B**.

54. **Ex. B** was signed by Plaintiffs and by Weingarten on behalf of Defendants AO and VRG and made effective July 19, 2022.

55. On July 20, 2022, an attorney for Defendants Weingarten, AO, and VRG forwarded an email to Plaintiffs confirming that Defendant Landmark had received the Deposit.

56. Attached to the July 20 email was a letter from Rekant and Landmark confirming that the Deposit "for the purchase of the above-referenced transaction" had been received. The transaction referenced was the purchase of the "Astoria Apartment Homes" – the transaction detailed in both **Ex. A and Ex. B**.

57. The letter from Landmark and Rekant was dated July 19, 2022.

58. Rekant and Landmark also provided the title commitment for the transaction pursuant to **Ex. A**.

59. Weingarten was aware of Landmark's representations to Plaintiffs that the Deposit had been funded.

60. Defendants Landmark and Rekant were aware or should have been aware of the terms and conditions of **Ex. A and B**, specifically the terms of the Deposit that Landmark was holding as escrow agent and title insurance agent on behalf of Old Republic.

61. Defendant Landmark and Rekant were aware, or should have been aware, that the Deposit was non-refundable, as described above.

62. Unbeknownst to Plaintiffs but known to Weingarten, upon information and belief, at the time Defendants entered into **Ex. A and B**, Defendants knew they would only Close on the sale if Plaintiffs agreed to lower the price almost immediately after **Ex A** and then **Ex. B** were signed.

63. Almost immediately after Plaintiffs agreed to lower the Contract price through **Ex. B**, which was signed by Weingarten; Weingarten once again stated that Defendants would not honor their obligations unless Plaintiffs agreed to renegotiate **Ex. B**, including further the purchase price. Such evidences bad faith negotiations, fraudulent conduct and anticipatory breach of same.

64. Plaintiffs did not immediately agree to a renegotiation of **Ex. A**.

65. Shortly after Weingarten made his demand for a second renegotiation of the agreements between the parties, which can only be construed as breach thereof including breach of the covenant of good faith and fair dealing, Plaintiffs contacted Landmark to re-confirm that

the Deposit was being held pursuant to the salient documents.

66. Rekant replied to Plaintiffs on July 27 that it was "not involved in this transaction."

67. This July 27 statement directly contradicts Rekant and Landmark's earlier representations that they had received the Deposit.

68. Upon information and belief, Weingarten entered into **Ex. A and B** to take the real estate off the market, explore financing options with entities related to Plaintiffs, then work with Landmark and Rekant to withhold the Deposit and demand renegotiations. Such is evidence of fraudulent intent and breach of the duty of good faith and fair dealing.

69. After the Contract was entered into on June 16, 2022, market conditions for the sale of multifamily residential real estate have worsened. Conditions have further worsened since the execution of **Ex. B**.

70. Upon information and belief, Weingarten knew, or reasonably should have known, that he and the other Defendants were unable or unwilling to pay the Deposit at the time they agreed to pay the Deposit pursuant to **Ex. A and/or B**.

71. Defendants Weingarten and VRG completely dominate and control the finances, policy, and business practices of Defendant AO.

72. Unbeknownst to Plaintiffs, AO was incorporated in Delaware on June 15, 2022, the day before Weingarten entered into **Ex. A** on its behalf.

73. Upon information and belief, Weingarten owns a controlling interest in the other Defendants.

74. Weingarten used his control of the other Defendants for an improper purpose – namely entering into contracts with Plaintiff that the obligated party (AO) had no willingness to

pay.

75. Weingarten had no intention of paying the amounts owed under the **Ex. A or Ex. B** at the time he signed the contracts on behalf of Defendant AO unless Plaintiffs agreed to lower the purchase price.

76. Then, when Plaintiffs agreed to lower the purchase price, Weingarten, upon information and belief, either again refused to fund the Deposit, or funded the Deposit with Defendant Landmark with an agreement that Landmark and Rekant would refund the Deposit upon Defendants' demand, in violation of Defendants' agreement with Plaintiffs and Landmark's and Rekant's fiduciary duties to Plaintiffs.

77. Weingarten intentionally undercapitalized AO so that it could be shut down to avoid its contractual obligations.

78. Weingarten has commingled funds from Defendant AO and VRG and has operated those Defendants without required corporate formalities.

79. Weingarten's control over Defendants AO and VRG caused Plaintiff's injury.

80. As such, Weingarten and the other Defendants should be jointly and severally liable under Plaintiff's contract under an alter ego theory to avoid unjust and inequitable consequences.

## COUNT ONE
## BREACH OF CONTRACT
### (As To Defendants AO, VRG, and Weingarten)

81. Plaintiffs repeat and restate each and every allegation as set forth in the preceding paragraphs as if set forth in full herein.

82. Plaintiff and Defendants entered into **Exhibits A and B**.

83. The contract(s) were properly formed in that both parties, sophisticated, reviewed

and accented to same, and there was consideration, a meeting of the minds, and all other contract formation formalities were met.

84. Plaintiff(s) performed all obligations under **Exhibits A and B**.

85. Defendants were obligated to fund Deposit pursuant to **Exhibits A and B**.

86. Upon information and belief, Defendants either refused to fund the Deposit after receiving a Notice of Default from Plaintiffs concerning the Deposit or funded the Deposit with Defendant Landmark with Landmark's agreement that the Deposit would be refunded upon Defendant's demand.

87. Defendants breached the applicable Contract(s) by refusing to fund the Deposit or funding it with Landmark's agreement to refund the Deposit upon Defendants' demand.

88. Defendants have informed Plaintiffs that they will not consummate the purchase of real estate pursuant to **Exhibits A and B** and that the Deposit will not be paid to Plaintiffs.

89. The Deposit is therefore due and owed to Plaintiffs.

90. As a result of Defendants' breaches, Plaintiffs have been harmed and suffered damages, specifically the loss of the $2,000,000 Deposit that Defendants agreed to pay under the contract along with interest and other damages including, but not limited to, compensatory and exemplary damages, along with interest thereupon.

## COUNT TWO
## NEGLIGENT MISREPRESENTATION
### (As To Landmark and Rekant)

91. Plaintiffs repeat and restate each and every allegation as set forth in the preceding paragraphs as if set forth in full herein.

92. As escrow agent for the deal, Landmark created a special and/or privity like

relationship with the Plaintiffs, imposing a duty upon them to impart correct information to Plaintiff.

93. Landmark, and Rekant made statements to the Plaintiffs with respect to its obligations as escrow agent including that it would retain the Deposit pursuant to the terms of **Exhibits A and B** and that it had received the Deposit.

94. Those statements were either incorrect or false.

95. Landmark and Rekant knew that Plaintiffs relied upon, or reasonably relied upon the statements regarding escrow of the Deposit.

96. As set forth herein, Landmark and/or Rekant did not obtain the Deposit or, in violation of their obligations as escrow agent, returned same to Defendants in violation of their obligations and the relevant contracts.

97. The later statement by Rekant that Landmark was not involved in the underlying deal evidences breach of the duties imposed upon Landmark as escrow agent or other wrongful conduct.

98. As a result of Landmark and Rekant's conduct, Plaintiffs have been harmed and damaged.

**COUNT THREE**
**FRAUD AND CONSPIRACY TO COMMIT FRAUD**
**(As To Defendants AO, Weingarten, VRG, Landmark, and Rekant)**

99. Plaintiffs repeat and restate each and every allegation as set forth in the preceding paragraphs as if set forth in full herein.

100. As set forth above, these Defendants made multiple statements of fact to Plaintiffs and/or their agents with respect to material issues related to the Deal.

101. The statements as set forth above were made with the intent that Plaintiffs rely upon same.

102. The statements made by these Defendants were false, known to be false, and were known to be false at the time of the making of same.

103. Plaintiffs did rely upon the statements of Defendants in their dealings including, but not limited to, the multiple statements and promises with respect to the funding of the underlying deal and the Deposit.

104. As set forth herein, and upon information and belief, the Defendants conspired together to make such false statements and the fraudulent conduct as set forth above as part of a common scheme to attempt to coerce Plaintiffs to sell the Property at an amount far less than they agreed. Further, when broached with the reality that Plaintiffs would not capitulate to this fraudulent and otherwise wrongful conduct, had in place or planned together a method to deprive Plaintiffs of their contractually obligated rights to the Deposit by either never having funded same (and Landmark and Rekant knowing that it was not funded yet falsely claiming it was) or by returning the Deposit to Defendants to fraudulently deprive Plaintiffs of the ability to obtain the benefit of same.

105. As a result of the conduct of these Defendants, Plaintiffs have been harmed, and damaged, and are entitled to an award of compensatory damages as well as punitive damages and other relief.

## COUNT FOUR
## BREACH OF FIDUCIARY DUTY
### (As To Defendants Landmark and Old Republic)

106. Plaintiffs repeat and restate each and every allegation as set forth in the preceding paragraphs as if set forth in full herein.

107. Defendant Landmark is an escrow agent and licensed title company in New York.

108. Under New York (and Missouri and North Carolina) law, an escrow agent and title company owes the parties to a transaction a fiduciary duty.

109. Plaintiffs are a party to the transaction at issue in this case.

110. Under **Exhibits A and B**, Landmark is the designated escrow agent and was identified as the Title Company issuing the title insurance commitment.

111. Further, Landmark acknowledged its obligation as escrow agent in writing.

112. Under New York (and Missouri and North Carolina) law, an escrow agent has a duty not to deliver monies held in escrow except upon strict compliance with the conditions imposed by the controlling agreement.

113. Under New York (and Missouri and North Carolina) law, a title insurance agent owes clients fiduciary duties of loyalty, disclosure, and care.

114. Under New York (and Missouri and North Carolina) law, an escrow agent's failure to abide by the terms and conditions governing escrowed monies is a tortious act.

115. Landmark repeatedly stated that it had received the Deposit required by **Exhibits A and B** and otherwise acknowledged those same documents and its obligations as a result of those agreements and the law.

116. As an escrow agent, Landmark was either aware, or had a duty to be aware, of the terms of **Exhibits A and B** that set the conditions governing the Deposit.

117. Upon information and belief, Landmark either never received the Deposit (and falsely claimed it had), or received the Deposit from the other Defendants and then refunded the Deposit in violation of the conditions set forth in **Exhibits A and/or B** which governed the

Deposit.

118. Landmark has therefore breached its fiduciary duty to Plaintiffs as the escrow agent for the transaction described above.

119. Additionally, Defendants Landmark and Rekant were aware or should have been aware of the terms both **Exhibits A and B**, which identified it as the title insurance agent.

120. On July 12, 2022, Defendant Landmark, as an agent for Defendant Old Republic emailed to Plaintiffs that commitment for title insurance required by Section 4.2 of **Exhibit A**.

121. Schedule BI of that commitment required that Defendants Weingarten and Valor Residential "pay the agreed amount." That amount, identified in the commitment, was $62,500,000.

122. Defendants Landmark and Rekant knew or should have known that Defendants Weingarten and VRG did not intend to honor the original or amended Contract by paying the agreed amount as required by the title insurance commitment.

123. However, Landmark as an agent of Old Republic did not re-issue or cancel the title commitment.

124. As the principal, Old Republic is vicariously liable for the misrepresentations of its agent, Landmark.

125. The title commitment provided by Landmark identifies Landmark as an agent of Old Republic; Landmark acted under the actual or apparent authority of Old Republic.

126. Upon information and belief, the title commitment was provided to Plaintiffs on July 12 to induce Plaintiffs to enter into the First Amendment.

127. As result of the Defendants' breach of their fiduciary duties to Plaintiffs, Plaintiffs

suffered a pecuniary loss, specifically, Plaintiffs did not receive the Deposit.

128. Additionally, Plaintiffs have lost the opportunity to sell the real estate for the price stated in the Contract.

**COUNT FIVE**
**CONVERSION**
**(As To Defendant AO, VRG and Weingarten)**

129. Plaintiffs repeat and restate each and every allegation as set forth in the preceding paragraphs as if set forth in full herein.

130. Pursuant to the terms of **Exhibits A and B**, upon these Defendants failure to comply with the terms therein, and breaching same, the Deposit was to be transferred to Plaintiffs.

131. This specifically identifiable amount has not been transferred and, instead, these Defendants have exacted dominion over same, retaining same, and depriving Plaintiffs of the funds to which they are entitled to own.

132. Therefore, by virtue of the conduct of these Defendants, Plaintiffs have been harmed and damaged.

**COUNT SIX**
**CLAIM FOR LEGAL FEES AND COSTS**
**(As To All Defendants)**

133. Plaintiffs repeat and restate each and every allegation as set forth in the preceding paragraphs as if set forth in full herein.

134. Per the terms of **Exhibits A and B**, if Plaintiffs are forced to bring the within action, upon finding in their favor, Plaintiffs are entitled to an award of counsel fees and costs related to the enforcement of these documents.

135. Therefore, Plaintiffs request and award of counsel fees and costs.

**WHEREFORE**, Plaintiffs request judgement in their favor, and against Defendants, jointly and severally, as follows:

A. An award of compensatory damages in an amount of no less than Two Million Dollars;

B. An award of exemplary damages;

C. An award of punitive damages;

D. An award of legal fees and costs of suit;

E. An award of prejudgment and post judgment interest at the statutory rate of 9% per annum as under New York law; and

F. Other such relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs hereby demand a jury trial on triable issues raised by this complaint.

Dated: This 19th Day of May, 2023

                                          Respectfully Submitted,
                                          **LURIE STRUPINSKY, LLP**

By: /s/ Joshua M. Lurie
      15 Warren Street, Suite 36
      Hackensack, New Jersey 07601
      Tel: (201) 518-9999
      Fax: (201) 479-9955
      Email: jmlurie@luriestrupinsky.com