# Exhibit B

# FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT

THIS FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT (this "**Amendment**") is made and entered into and effective as of July 19, 2022 (the "**Amendment Date**"), by and between ASTORIA OWNER LLC, a Delaware limited liability company ("**Purchaser**"), and CAPE FEAR MULTIFAMILY, LLC, a North Carolina limited liability company, ("**Seller**").

## RECITALS

A.   Seller and Purchaser entered into that certain Purchase and Sale Agreement with an effective date of June 16, 2022 (the "**Purchase Agreement**"), pursuant to which Seller agreed to sell and Purchaser agreed to purchase certain real estate commonly known as "The Astoria Apartment Homes" having a principal address of 405 Grand Wailea Dr., Hope Mills, North Carolina 28348 as more particularly described in the Purchase Agreement.

B.   Purchaser and Seller desire to amend and modify the Purchase Agreement in accordance with the terms and conditions contained in this Amendment.

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Seller and Purchaser agree as follows:

1.   <u>Defined Terms</u>.  Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Purchase Agreement.

2.   <u>Amendment to Purchase Agreement</u>.  The Purchase Agreement is hereby amended as follows:

   a.   <u>Purchase Price</u>.  Deleting the first paragraph of Section 3.1 of the Purchase Agreement in its entirety and replacing it with the following provision:

   "<u>**Section 3.1.**  **Purchase Price**</u>. The purchase price (the "<u>Purchase Price</u>") for the Property shall be Sixty Million Five Hundred Thousand and No/100 United States Dollars ($60,500,000.00), payable to Seller as follows:"

   b.   The definition of the term "Effective Date" in the Purchase Agreement is hereby amended to mean the Amendment Date.

   c.   Notwithstanding anything in the Purchase Agreement to the contrary, Seller shall deliver the Deposit to Title Company on the Amendment Date.

   d.   If Purchaser obtains an update to the Survey or a new ALTA/NSPS survey on or prior to the date that Purchaser delivers notice to Seller of Purchaser's Objectionable Exceptions, then the definition of the term "Survey" in the Purchase Agreement shall mean such updated Survey or new ALTA/NSPS survey.

  e. Notwithstanding anything in the Purchase Agreement to the contrary, the Objection Deadline shall be the date which is thirty (30) days following the Effective Date.

  f. At Closing, Seller shall, at Purchaser's option, cause its affiliate, Maxus Properties, Inc., or another affiliate of Seller, to fund a preferred equity investment in Purchaser or, at Purchaser's option, Purchaser direct or indirect parent entity in an amount that, together with Purchaser's mortgage debt, provides financing for Purchaser's acquisition of the Property in the total amount of Fifty-One Million Four Hundred Twenty-Five Thousand Dollars ($51,425,000.00) (the "**Preferred Equity Investment**"). Except as to the economic terms set forth on Schedule 1 attached hereto, the Preferred Equity Investment shall be the on the same terms as the preferred equity investment made by Seller's affiliate, MaxMez NC, LLC, in Hawks PVO Holding LLC ("**Hawks**") and the investment shall be governed by the same form of limited liability company agreement as the limited liability company agreement of Hawks, modified only to accurately reflect the parties, the Property, the organizational structure (which may include multiple entities or tenants-in-common similar to Hawks), the mortgage debt, and the terms set forth on Schedule 1 attached hereto. Purchaser's obligation to purchase the Property and consummate the transactions contemplated by the Purchase Agreement is conditioned on the prior funding and closing of the Preferred Equity Investment by Seller or its affiliate. If Seller fails to make or cause its affiliate to timely make the Preferred Equity Investment, then Purchaser may, at its option, either (a) terminate the Purchase Agreement and receive a refund of the Deposit, whereupon neither Party shall have any further obligation to the other Party hereunder, or (b) expressly waive said condition in writing and proceed to Closing without any reduction in the Purchase Price.

3. <u>Ratification</u>. Except as expressly modified and amended by this Amendment, the Purchase Agreement has not been modified or amended, is hereby ratified and confirmed by Seller and Purchaser, and is subject to each of the terms, provisions and conditions thereof, as amended hereby, and is hereby declared by Seller and Purchaser to be in full force and effect. To the extent of any inconsistency between the Purchase Agreement and this Amendment, the terms of this Amendment shall control.

4. <u>Counterparts; Scan and Email Execution</u>. This Amendment may be executed in separate counterparts, each of which shall constitute an original although not fully executed, but all of which, when taken together, shall constitute but one agreement. The signature page(s) of any counterpart may be detached from a counterpart (without impairing the legal effect of the signature(s) thereon) and attached to any other counterpart identical thereto except for the signature page(s) attached to it. To facilitate execution of this Amendment, the parties may exchange copies of signatures by electronic transmission in portable document format (pdf), facsimile transmission or other fixed format, which copies shall be deemed originals of this Amendment. Any counterpart of this Amendment that is delivered by electronic transmission or facsimile transmission shall be deemed to have been fully and properly executed and delivered, for all purposes hereof and shall be binding on the party delivering such counterpart. Except insofar as reference to the contrary is

2

CORE/1004180.0054/175602642.7

made in any such instrument, all references to the "Purchase Agreement" in this Amendment or in any future correspondence or notice shall be deemed to refer to the Purchase Agreement as modified by this Amendment.

[*Remainder of Page Intentionally Blank. Signature Page Follows*]

IN WITNESS WHEREOF, the Seller and Purchaser have executed this First Amendment to Purchase and Sale Agreement, intending to be legally bound hereby as of the Amendment Date.

**PURCHASER**:

**ASTORIA OWNER LLC**,
a Delaware limited liability company

By: _____
Name: Moshe Weingarten
Title: Authorized Signatory


**SELLER**:

**CAPE FEAR MULTIFAMILY, LLC,**
a North Carolina limited liability company

By: _____
Name: Adam Fletcher
Title: Authorized Agent

# SCHEDULE 1

## Preferred Equity Investment Economic Terms

1. "Capital Members Current Preferred Return Rate" (i.e., current year return):

    a. Year One: Three Percent (3%)

    b. Year Two: Five Percent (5%)

    c. Each Year of Preferred Equity Investment thereafter:  Six and 50/100 percent (6.5%)

    d. Catchup to 6.5% in Years Three and Four, evenly over a twenty-four month period, from the lower Current Preferred Return in Years One and Two.

    e. "Redemption Date" means the earlier to occur of: (a) ten (10) years following the Closing Date, or (b) one (1) day following the maturation of the Senior Mortgage Loan, as such loan may be extended (but in no event less than five (5) years).